IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JESSICA SANTANA | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ANDREW SAUL, | : | |
| Commissioner of Social Security | : | NO. 19-2951 |

O P I N I O N

JACOB P. HART                                                                          DATE:  April 29, 2020
UNITED STATES MAGISTRATE JUDGE

      Jessica Santana brought this action under 42 USC §405(g) to obtain review of the decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  She has filed a Request for Review to which the Commissioner has responded.  As set forth below, Santana's Request for Review will be denied and judgment entered in favor of the Commissioner.

I.      Factual and Procedural Background

      Santana was born on March 25, 1982.  Record at 139.  She completed high school.  Record at 177.  She worked in the past in such jobs as cashier in a clothing store, and office cleaner.  Record at 177, 693-4.  On February 24, 2016, Santana completed applications for DIB and SSI.  Record at 138, 141.  She alleged disability since June 17, 2015, as a result of back pain, kidney disease, and depression.  Record at 139, 176.

      Santana's applications for benefits were denied.  Record at 57, 58.  She then sought *de novo* review by an Administrative Law Judge ("ALJ").  Record at 73, 74.  A hearing was held in this case on April 17, 2018.  Record at 681.  In a written decision dated July 31, 2018, however, the ALJ denied benefits.  Record at 15.

The Appeals Council denied Santana's request for review on May 16, 2019, permitting the ALJ's decision to stand as the final decision of the Commissioner. Record at 1. Santana then filed this action.

II.     Legal Standards

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence viewed objectively as adequate to support a decision. Richardson v. Perales, supra, at 401; Kangas v. Bowen, 823 F.2d 775 (3d Cir. 1987); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979). Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards. Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (iv). At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v). At the fifth and last step, we consider our assessment of your residual functional capacity

and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 CFR §404.1520 (references to other regulations omitted).

III.   The ALJ's Decision and Santana's Request for Review

In her decision, the ALJ determined that Santana suffered from the severe impairments of migraine headaches, carpal tunnel syndrome in the left hand, disorders of the spine, major depressive disorder, and generalized anxiety disorder. Record at 18. Her kidney disease was found not to be severe. Id. The ALJ determined that none of these impairments, and no combination of impairments, met or medically equaled a listed impairment. Record at 18-20.

The ALJ then wrote:

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR §404.1567(a) and 416.967(a) except that the claimant can only occasionally lift ten pounds, frequently lift and carry five pounds, stand and walk for a total of about two hours in an eight-hour workday, and sit for approximately six hours in an eight-hour workday, but will need to alternate sitting/standing every 30 minutes for five minutes at the workstation. She can push and pull as much as she can lift and carry, she can perform postural maneuvers on an occasional basis, but can never climb ladders, ropes, or scaffolds. Additionally, the claimant must avoid concentrated exposure to industrial machinery and unprotected heights. She can frequently perform manipulatives with the right upper extremity, and can handle noise levels at moderate per the SCO. She can ambulate with a cane but could carry items up to then pounds in her free hand. She would be limited to unskilled work with simple instructions and routine and repetitive tasks as defined by the Dictionary of Occupational Titles ("DOT") at specific vocation preparation ("SVP") levels 1 and 2. Finally, the claimant would be limited to having occasional interaction with the general public and any changes in the workplace would need to be infrequent.

Record at 20.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ concluded that Santana was unable to return to her prior work. Record at 24. However, she could work as a document preparer, addresser, or table worker. Record at 25. She decided, therefore, that Santana was not disabled. Record at 26.

In her Request for Review, Santana argues that the ALJ did not adequately consider the medical opinion evidence as to her mental illness. She also asserted that she was entitled to remand because the record filed by the Agency did not include a hearing transcript. After Santana filed her Request for Review, however, and prior to filing its own response, the Agency filed a supplemental record including the transcript of Santana's hearing before the ALJ.

Santana has had ample time to add claims or evidence to her Request for Review in a reply memorandum, after having reviewed the transcript, and she has not done so. Therefore, only the first claim remains in this case.

IV. Discussion: The Evidence of Mental Illness

A. Dr. Mezhevich

Santana complains that the ALJ rejected all opinions from mental health professionals that examined her, in favor of an opinion from an agency physician who did no more than review her records. She points to the ALJ's treatment of the report of the consulting examiner, Tatyana Mezhevich, Psy.D.

Dr. Mezhevich indicated that Santana was markedly limited in the ability to carry out complex instructions, and the ability to make judgments on complex work-related decisions. Record at 580. She also indicated that Santana was markedly limited in the ability to respond appropriately to usual work situations and to changes in a routine work setting. Record at 581. She attributed these limitations to Santana's excessive worry, sadness, and irritability, to deficits

in her concentration and attention, and to a learning disability. Record at 580-1. According to the terms of the form which Dr. Mezhevich completed, a marked limitation meant that there was "a substantial loss in the ability to function" in that area. Record at 580.

In other areas, Dr. Mezhevich found lesser limitations. She found that Santana was only mildly limited in the ability to understand, remember, and carry out simple instructions. Record at 580. She was moderately limited in the ability to make judgments on simple work-related decisions. Id. She was also moderately limited in the ability to interact appropriately with co-workers and supervisors, although only mildly limited in the ability to interact with the public. Record at 581.

The ALJ gave Dr. Mezhevich's opinion partial weight. Record at 23. She wrote:

> Significant weight is given to the portion of the opinion limiting the claimant to mild and moderate limitations. Little weight is given to the marked limitations as they are inconsistent with the evidence and independent activities that the claimant reported that she was able to do including child care duties, attending meetings, scheduling and maintaining medical appointments.

Record at 23.

Initially, this does appear somewhat results oriented, as if the ALJ rejected all "marked" findings because she had already decided that Santana was not markedly limited. However, the disparity between Dr. Mezhevich's opinion and the RFC assessed by the ALJ is actually small. The marked limitations Dr. Mezhevich found in coping with complex work situations were apparently accepted, since the ALJ limited Santana to unskilled work with simple instructions and routine and repetitive tasks. Thus, the question becomes whether substantial evidence supported the ALJ in disagreeing with Dr. Mezhevich about whether Santana was markedly limited in her ability to respond appropriately to usual work situations and to changes in a routine work setting.

Santana argues that the ALJ overestimated the importance of her parenting to her ability to function in the workplace.  She wrote that, since the transcript was missing, it was not clear whether she had testified to difficulties in child rearing.  At this point, however, the transcript is available and it is clear that there was no such testimony, despite the fact that Santana was the only adult in her household.  Record at 703.  Moreover, at the time of the hearing she had given birth to her fourth child only four days previously (one child lived with his father but came to her house Friday after school through Monday morning), so childcare would have been a considerable task.  Record at 691-2.

Santana testified that she woke her seven-year-old daughter, dressed her, did her hair, packed her snacks, and walked her to and from school each day.  Record at 701-2.  She helped her with her homework to the best of her ability.  Record at 703.  On Mondays, she also sent her twelve year old son to school.  Record at 703.  She attended parent-teacher conferences.  Record at 704.  About twice per week, she took her children to the park, and she occasionally took them out to eat.  Id.

Unlike in Littlefield v. Colvin, Civ. A. No. 96-40, 2017 WL 4221142 (S.D.N.Y. Aug. 31, 2017), which she has cited, Santana testified that she had no help with childcare.  Record at 701.  The ALJ also elicited testimony that she had no involvement with child protective services.  Record at 715-6. Given Santana's management of a house with four children, with at least adequate success, the ALJ was entitled to infer that she was capable of coping with some degree of change in her daily responsibilities.

It is possible that coping in a work setting was more difficult for Santana than functioning in the home. However, the ALJ also relied upon the fact that Santana was able to coordinate her medical appointments and interact with her health care providers independently. Santana has not pointed to any evidence to the contrary, and none is apparent on the record.

On the contrary, Santana was repeatedly described by her physical health care providers as having normal concentration, with no confusion, or as having a normal mood, affect, behavior, and thought content. Record at 543, 588, 593, 600, 607, 645, 676. Santana told Dr. Mezhevich that she lost her last job because her physical complaints caused her to be absent frequently, and not because of a mental inability to cope with work changes or situations. Record at 575.

Thus, even though Santana may have had meaningful limitations in her ability to respond appropriately to work situations and to changes in her work setting, the ALJ's conclusion that she did not have a "substantial loss of ability to function" in those areas was well-supported by the evidence. Santana has not, therefore, shown that the ALJ wrongly assessed Dr. Mezhevich's report.

B.   Dr. Sholevar

The record also contains a report from Pirooz Sholevar, MD, a psychiatrist who treated Santana at the Buena Vida Behavioral Health Center. Record at 677-9. Dr. Sholevar indicated that Santana had "marked" or "extreme" limitations in eighteen of nineteen areas. Id. She was only moderately limited in her ability to use public transportation. Id.

The ALJ wrote:

Little weight is given to the opinion of claimant's medical treatment provider, Pirooz Sholevar, MD in Exhibit 12F, as Dr. Sholevar's office has refused to send medical records, so there are no records to support this grave opinion. Additionally, the claimant's current parenting abilities and activities of daily living do not evidence marked

7

>or extreme limitations.  As this opinion is not consistent with the evidence or supported by treatment notes, or any evidence of referrals for higher levels of care, to social service providers due to inability to parent or inpatient hospitalizations due to progression of symptoms, it is given little weight.

Record at 23

There is some merit to Santana's argument that she should not be penalized for the failure of Dr. Sholevar's office to provide treatment notes, even in response to a subpoena which was issued by the ALJ.  Record at 133.  However, it is inescapable that the record lacked the notes which presumably underlay Dr. Sholevar's opinion.  Crucially, after noting the lack of treatment notes, the ALJ went on to cite other evidence in the record which contradicted Dr. Sholevar's findings of multiple marked and extreme limitations.

As above, Santana appeared to be coping adequately with the sole responsibility for three of her children – including a newborn – and shared responsibility for the fourth.  Other than that, she represented in her function report that she was responsible for preparing food, cleaning, laundry, and shopping at the supermarket.  Record at 223.  She cooked lunch and dinner every day, taking whatever time was necessary.  Record at 224.  She had no problems with personal care, such as washing and dressing herself, and she needed no reminders to perform these duties.  Record at 223-4.  She was able to walk or take public transportation to her destinations.  Record at 225.

According to Santana, the ALJ should not have relied upon what Santana calls sporadic or transitory activities.  It is well established that sporadic or transitory activity does not disprove disability.  Smith v. Califano, 637 F.2d 968, 971-2 (3d Cir. 1981); Nazario v. Commissioner of Social Security, 794 Fed. App'x. 204, 212 (3d Cir. 2019).

Even if housekeeping can be called sporadic and transitory, however, parenting duties cannot.  In other words, if Santana fed her children, changed her newborn, and got her seven-year-old to school only sporadically, she would be failing at the task of parenting.  Yet, the evidence suggests that this is not the case.  In this respect, therefore, it was relevant that she was responsible for four children.

Further, as the ALJ pointed out, Santana never had a mental hospitalization or partial hospitalization.  Record at 575, 716.  Although Santana told Dr. Mezhevich that she had mental health care throughout her life, she had only weekly therapy and medication checks every month or two with a psychiatrist throughout the relevant period.  Record at 575, 716.

C.   Dr. Croyle

Grant Croyle, Ph.D., is the mental health expert who reviewed Santana's records for the agency at the initial stage of her application.  The ALJ gave his report "significant weight."  Record at 23.  Santana argues that if the ALJ gave significant weight to Dr. Croyle's opinion that she had "moderate" restrictions in her activities of daily living, then she erred in finding in her decision that Santana was only mildly limited in adapting and managing herself.  Record at 29.

This difference is not material.  Dr. Croyle specified that he found Santana capable of some work:

> The claimant can perform simple, routine, repetitive tasks in a stable environment. Claimant can make simple decisions.  The claimant is able to carry out very short and simple instructions.  The claimant is capable of asking simple questions and accepting instruction.  The claimant can function in production oriented jobs requiring little independent decision making.  Review of the medical evidence reveals that the claimant retains the abilities to manage the mental demands of many types of jobs not requiring complicated tasks.

Record at 40.

Thus, Dr. Croyle's report was consistent with the ALJ's determination that Santana required work which was unskilled, and required only simple instructions, routine and repetitive tasks, and a low level of specific vocational preparation, with infrequent workplace changes, and only occasional contact with the general public.  Record at 20.  As discussed above, these limitations were supported by substantial evidence of record.  Santana has not shown that the ALJ erred in her treatment of Dr. Croyle's evidence.

V.	Conclusion

In accordance with the above discussion, I will direct that the decision of the ALJ be affirmed, and judgment entered in favor of the Commissioner.

BY THE COURT:

/s/ Jacob P. Hart
_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE